IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

GIFFORD WHITEHURST, JR.,            *

            Plaintiff,               *

      v.                             *          CIVIL NO.: WDQ-11-3092

KATHLEEN SEBELIUS,                   *

            Defendant.               *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Gifford Whitehurst, Jr., *pro se*, sued Kathleen Sebelius,
Secretary of the United States Department of Health and Human
Services[1] ("the Secretary"), for violations of Title VII of the
Civil Rights Act and the Age Discrimination in Employment Act
("ADEA").  For the following reasons, the Secretary's motion to
dismiss and for summary judgment will be granted.

I.   Background[2]

Whitehurst is an African American man, born August 24,
1954.  ECF No. 1 ¶2.  He has an Associate's degree in Applied
Science and Bachelor of Arts degrees in Natural Science and
Mathematics.  *Id.* ¶14.

---

[1] The Department of Health and Human Services will be referred to
as "HHS."

[2] For the motion to dismiss, the well-pled allegations in the
amended complaint are accepted as true.  *Brockington v. Boykins*,
637 F.3d 503, 505 (4th Cir. 2011).  In reviewing a motion for
summary judgment, the non-movant's evidence "is to be believed,
and all justifiable inferences are to be drawn in [his] favor."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Whitehurst works in the Food and Drug Administration ("FDA") Office of Regulatory Affairs in the Central Region Baltimore District Office ("BDO"), a component of HHS. *Id.* ¶2. He has worked for the FDA since August 1990, when he became a Consumer Safety Inspector at the Port Elizabeth, New York office. *Id.* ¶14. He was promoted to a Consumer Safety Officer ("CSO") and received several raises with the promotion and after. *Id.* ¶¶15, 17. He worked in Buffalo and White Plains before transferring to the BDO as a CSO. *Id.* ¶¶17-19. On July 17, 2000, he transferred to the BDO, where he served three 30-day details as Baltimore District Acting Compliance Officer ("CO"), supervised by then-Compliance Branch Director Kirk Sooter. *Id.* ¶¶21-22. Before transferring to the BDO, Whitehurst had occasionally performed the duties of a CO, supervised and trained other employees, and checked private laboratories for FDA violations. *Id.* ¶16.

Whitehurst is a Union Steward for his chapter of the National Treasury Employees Union ("NTEU"). *Id.* ¶22. His duties include filing grievances against BDO management on behalf of union members. *Id.* ¶22. On October 4, 2007, Whitehurst emailed BDO District Director Evelyn Bonnin, noting that he had heard "rumors" that BDO "hiring and promotion practices" gave preferential treatment to women. *Id.* ¶28. In December 2007, Whitehurst began to represent a CSO, Vincent

2

Duncan in a termination procedure.  *Id.* ¶29.  On February 1, 2008, Whitehurst filed a formal grievance on Duncan's behalf, alleging violations of Title VII.  *Id.* ¶31.

On May 16, 2008, the BDO announced vacancies for COs and Supervisory COs ("SCO") around the country, including in the BDO. ("the BDO CO vacancy").  ECF No. 9-11 at 1; ECF No. 1 ¶36. The vacancy announcement noted three requirements: United States citizenship, one year of specialized experience, and at least 30 semester hours in various scientific fields; it said that "traditional rating and ranking of applicants" would not apply to the vacancy.  *Id.* at 2, 5-6.

On June 1, 2008, Whitehurst wrote to Bonnin, alleging that the BDO had discriminated against another employee on the basis of race and gender in violation of Title VII.  ECF No. 1 ¶33.

Whitehurst applied for several of the vacancies, and of over 250 applicants, he and three others were invited to interview for the BDO CO vacancy.  *Id.* ¶¶2, 39; ECF No. 9-13 (email from Sooter inviting Whitehurst to interview).  Sooter interviewed Whitehurst on August 12, 2008.  ECF No. 1 ¶40. During each interview, Sooter asked the same 16 questions, then asked the candidate to analyze one of several scenarios.  ECF No. 9-15.  Sooter noted the candidates' answers and--sometimes-- their responses.  *Id.*  On Whitehurst's scenario, Sooter noted

that Whitehurst had not addressed several relevant issues. *Id.*
at 6.

Although Whitehurst had "numerous years of field exper-
ience," on September 29, 2008, the BDO notified him that he had
done "well in the interview," but had not been selected for the
CO position in Baltimore. *Id.* ¶41. The BDO selected a 44-year-
old female Caucasian employee, Anne Aberdeen, for the position.
*Id.* Aberdeen had no field experience when she was selected.
*Id.* ¶2.[3]

---

[3] The Secretary has submitted Sooter's affidavit, stating that
although Whitehurst had more field experience than Aberdeen and
was the only candidate who answered any part of a legal question
correctly, he also had weaknesses--"mediocre . . . appraisal
from [his] supervisor," "poor" productivity, and weak reasoning
skills--which could not be overcome. ECF No. 9-14 ¶¶20, 23, 24.
Sooter was particularly concerned about Whitehurst's poor per-
formance on CO details, leading to complaints from his successor
temporary COs, and a "faulty conclusion on a case which imper-
iled [the FDA's] ability to take regulatory action." *Id.* ¶23.

Sooter felt that Aberdeen had several important strengths,
including "glowing recommendation[s]," "superior performance,"
"experience with litigation and FDA attorneys," adaptability,
and good communication skills, and her weaknesses--primarily
lack of experience--"could be overcome." *Id.* ¶¶23-24. Bonnin
"concurred with" Sooter's recommendation that the BDO select
Aberdeen for the CO position. ECF No. 9-19 ¶18.

The Secretary also provided Whitehurst's and Aberdeen's
2007 employee evaluations. ECF Nos. 9-16, 9-17. For each
criterion, employees were rated Exceptional (five points), Fully
Successful (three), Minimally Successful (two), or Unacceptable
(one). ECF No. 9-16 at 11. During 2007, Whitehurst was
assessed on five criteria; he was rated Exceptional for
"Investigations/Operations" and "Customer Service." *Id.* at 3,
7. He was Fully Successful for "Accurate Analysis and Report-
ing," "Clear Communication," and "Administrative requirements."

On October 8, 2008, Whitehurst filed an informal pre-complaint grievance against the BDO with the FDA Office of Equal Employment Opportunity and Diversity Management ("OEEODM"). *Id.* ¶43. On October 9, OEEODM counselor Sonia Picado was assigned to manage the informal complaint process. ECF No. 9-3 at 3. On December 8, the parties attempted to resolve the dispute through mediation; Whitehurst requested that the mediation be terminated on December 12. ECF No. 9-3 at 10; ECF No. 1 ¶44. On December 31, 2008, the OEEODM mailed Whitehurst notice of his right to file a formal complaint. ECF No. 1 ¶45.

On January 21, 2009, Whitehurst filed a formal complaint with OEEODM, alleging discrimination on the basis of age, race,

---

*Id.* at 3-6. His average score, 3.8, placed him in summary category "Fully Successful" (average score 3 to 4.3).

Aberdeen was assessed on six criteria: she was Exceptional in "Administrative Requirements," "Project Management," "Internal Communication," and "Customer Service and Team Work." ECF No. 9-17 at 3-5. She was Fully Successful in "Outreach" and "Cascading Element." *Id.* at 5-7. Her average score, 4.3, placed her in the Fully Successful summary rating. *Id.* at 8. The first page of Aberdeen's assessment states that the appraisal period ran from January 1, 2007 to December 31, 2007, and included her name, but pages two through eight have no employee name and state that the appraisal period ran from June 30, 2006 to "error." *Id.* at 1-8. Page 9 includes the same incorrect appraisal period, and Aberdeen's name is not in the "employee's name" block, but the narrative refers to "Anne Aberdeen" and notes that the performance period discussed is January 1, 2007 through December 31, 2007. *Id.* at 9. There, Aberdeen's supervisor said she believed Aberdeen was "perform[ing] in an outstanding manner, serving with distinction," working on litigation and assisting preparation for Congressional hearings. ECF No. 9-17 at 9.

and sex, and retaliation for opposing unlawful practices. *Id.*
¶46; ECF No. 9-5 at 2. He also stated that he believed there
was "Disparate Treatment/Impact" in his office because the BDO
"has a discriminatory . . . practice that favors the hiring and
promotion of females," over older, African American men. ECF
No. 9-5 at 5.

On February 9, 2009, District Training Coordinator Elicia
Slatten emailed all employees to announce a training course on
"Practical Compliance Applications." ECF No. 9-20 at 1 (email
training announcement). The announcement noted two pre-
requisites: that the employee be a "DCB[4]/CO who process[es] legal
actions," and has "[s]uccessfully completed [a] Compliance Law
course."[5] *Id.* Nominating employees were directed to give
priority to COs "with a need to process seizure or injunction
actions." *Id.* at 4. On February 11, 2009, Whitehurst applied
to attend the training course. He noted that he had "never
processed seizures and/or injunctions," but was "ab[le] to
perform this type of work." ECF No. 9-21 at 1. On February 17,
Aberdeen--then a CO--asked to attend the course, and Sooter
recommended that she be allowed to attend. *Id.* at 2. On
February 20, 2009, BDO Investigations Branch Director Christine

---

[4] A DCB is a Director of a Compliance Branch. ECF No. 9-20 at 4.

[5] It did not state whether applicants had to satisfy both
requirements. *See* ECF No. 9-20 at 1.

Smith told Slatten that Aberdeen and Whitehurst had been
nominated to attend the course, and recommended prioritizing
Aberdeen over Whitehurst.  On February 23, Smith told Slatten
that Whitehurst had not met the pre-requisites and should be
removed from the list of applicants.  ECF No. 9-22.  Aberdeen
was selected to attend the course; Whitehurst was not.  ECF No.
1 ¶83(b).

On February 24, 2009, the OEEODM notified Whitehurst that
it had accepted his claim for processing, and it understood the
claim to allege discrimination on the bases of age, race, and
sex, and retaliation, when he was not selected for the BDO CO
vacancy.  The letter instructed Whitehurst to notify the office
if he "believe[d] that [his] claims [we]re not correctly
identified."  ECF No. 9-6 at 1.  Whitehurst did not ask to
change the claims.  ECF No. 9-7 (declaration of EEO specialist
Viviana Bolton).

In late 2009, Whitehurst applied to attend an Active
Pharmaceutical Ingredient Manufacturing course; after he com-
plained that he had not been selected for that class, he was
added to the admission list and allowed to attend.  *Id.* ¶83(c).

On December 9, 2009, the OEEODM issued its Final Agency
Decision, finding no Title VII discrimination, *id.* ¶56, but did
not discuss Whitehurst's age-discrimination claim, *see* ECF No.
9-8 at 2 (listing bases for non-selection as Race, Sex, and

Retaliation).  On January 20, 2010, Whitehurst appealed the

OEEODM decision to the United States Equal Employment

Opportunity Commission ("EEOC"); on July 28, 2011, the EEOC

affirmed the decision.  ECF No. 9-9 at 5.  The EEOC noted that,

even if the OEEODM did not consider Whitehurst's age claim, the

outcome--finding no actionable discrimination--was correct

because of the "legitimate, nondiscriminatory reasons" for the

BDO's decision to select Aberdeen instead of Whitehurst for the

CO position.  *Id.*  Whitehurst received the EEOC's decision on

August 2, 2011.  ECF No. 1 ¶56.[6]

On October 3, 2011, Whitehurst filed a four-count

complaint, alleging violations of Title VII and the ADEA.  ECF

No. 1.[7]  On February 17, 2012, the Secretary moved to dismiss the

complaint, and for summary judgment.  ECF No. 9.  Whitehurst has

opposed the motion.  ECF No. 13.

---

[6] On August 29, 2011, Whitehurst filed a new complaint with
OEEODM, alleging discriminatory non-selection for a CSO position
at the Center for Tobacco Products, and two SCSO positions.  *Id.*
¶102.c.  The OEEODM found no discrimination and issued a right
to sue notice on April 4, 2012.  ECF No. 13-1 at 10.

[7] He alleges: discrimination under Title VII for non-selection
for the CO vacancy, based on his gender and race (count 1);
retaliation for exercise of Title VII rights, apparently based
on his non-selection for the CO vacancy and exclusion from the
training courses (count 2); discrimination under the ADEA for
not selecting him for the CO vacancy (count 3); and retaliation
for exercise of ADEA rights, apparently for excluding him from
the training courses (count 4).  *Id.* ¶¶94-102.

II.   Analysis

The Secretary moves to dismiss for failure to exhaust administrative remedies the retaliation claims that are based on exclusion from training courses, and any disparate impact claims.  She moves to dismiss any pattern or practice claims and remaining retaliation by exclusion from training claims for failure to state a claim, and seeks summary judgment on the remaining claims.  ECF No. 9-1 at 8-16.  As a pro se litigant, Whitehurst's filings will be construed liberally, even if his arguments and pleadings are "inartful[]."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

A.   Subject Matter Jurisdiction

The Secretary contends that the complaint "raise[s] several unexhausted claims" over which the Court lacks jurisdiction. ECF No. 9-1 at 9.  She believes that Whitehurst's claims allege (1) a continuing Title VII violation based on the demographic composition of the staff at the BDO, (2) discriminatory practices in assigning short-term employee details, cancelling vacancy announcements, and nepotistic promotions, (3) a claim based on disparate impacts on all minority male employees, and (4) retaliatory exclusion from training courses.[8]  *Id.* at 9-10;

_____

[8] In a disparate impact claim, the plaintiff alleges that his employer engages in "some employment practice or procedure . . . which, though neutral or fair on its face, has a discriminatory

9

ECF No. 17 at 3.  Whitehurst counters that his claims are limited to two vacancy announcements for which he was not selected, a disparate impact claim, and the retaliation claims which include retaliatory exclusion from training; he states that the other allegations in the complaint are "only relevant background evidence for . . . [his] non-selection claim[s]." ECF No. 13 at 10-11.

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it lacks subject matter jurisdiction.  The plaintiff has the burden of proving the Court has jurisdiction, but the Court must make all reasonable inferences in the plaintiff's favor.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true.  *Id.*  A plaintiff's failure to exhaust his administrative remedies before filing suit deprives the Court of subject matter jurisdiction.  *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004).

"An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act.  A charge is

---

impact on [a protected group]." *Pope v. City of Hickory, N.C.*, 679 F.2d 20, 22 (4th Cir. 1982); 42 U.S.C. § 2000e-2(k).

acceptable only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).  The facts alleged in the complaint must correspond or be reasonably related to the factual allegations in the administrative charge.[9]  *Id.*  The facts are reasonably related if "a reasonable investigation of [the plaintiff's] administrative charge would have uncovered the factual allegations set forth in the formal litigation." *Id.* at 512.

If the administrative charge alleges "a discrete act or acts," the plaintiff may not "subsequently allege[] a broader pattern of misconduct."[10]  *Id.* at 509.  The Court may consider

---

[9] In applying this standard, the Court bears in mind that because laypersons are expected to initiate and understand Title VII and the ADEA, the procedural requirements should not "become a tripwire for hapless plaintiffs." *Sydnor v. Fairfax Cnty., Va.*, No. 11-1573, 2012 WL 2312775, *2 (4th Cir. June 19, 2012).  "It would be inconsistent with [the ADEA and Title VII] framework[s] to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." *Id.*

[10] For example, an employee who filed an EEOC charge which alleged three specific episodes of harassment by supervisors during isolated confrontations, without mentioning coworkers' harassment or the use of national-origin slurs, did not exhaust his administrative remedies for his lawsuit in which he claimed that his coworkers had "continually made derogatory national-origin remarks to him over the course of his twenty-year career." *Chacko*, 429 F.3d at 510-11.  In *Dennis v. County of Fairfax, Virginia*, an employee who filed an EEOC charge "alleging disparate disciplinary action" based on one incident did not exhaust his administrative remedies before filing a Title VII claim based on the employer's "hiring, promotion, and training" practices.  55 F.3d 151, 153, 156 (4th Cir. 1995).

11

whether the employee "checked the 'continuing action' box in his administrative charges" when deciding whether the complaint exceeds the bounds of the administrative charge. *Id.* at 511. The same requirements apply to ADEA claims. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

To the extent Whitehurst's claims are based on the August 29, 2011 OEEODM charge, he had not exhausted his administrative remedies when he filed in this Court because that charge was pending. *See Khoury*, 85 F. App'x at 960.  Whitehurst also has not exhausted his administrative remedies on the retaliation claims based on exclusion from training; his OEEODM complaint did not raise the issue, as he filed it before signing up for either training course and did not amend it to note the exclusions.  ECF No. 1 ¶¶46, 83; ECF Nos. 9-6, 9-7, 9-21, 9-22.

Whitehurst's EEOC charge notes that he alleges "disparate treatment/impact" as a basis on which he believed he was dis-criminated.  ECF No. 9-5 at 2.  The EEOC charge also asserts that the BDO "has . . . discriminatory promotion and hiring practices/procedures, which ha[ve] an adverse impact on older male employees, . . . [and] all African American male employees." *Id.* at 5.  These facts correspond to disparate treatment and impact claims, because they do not specify whether the practice is allegedly discriminatory on its face, or only because of its effect.  The Court has subject matter

12

jurisdiction over a disparate impact claim based on the BDO's promotion and hiring practices and procedures. *See Chacko*, 429 F.3d at 509 (administrative action must "describe generally" the action complained of).[11]

    B.   Dismissal for Failure to State a Claim

The Secretary moves to dismiss any pattern or practice allegations for failure to state a claim. ECF No. 9-1 at 12-13.

    1.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,

---

[11] Because the original charge adequately alerted the Secretary to the disparate impact claim, it is irrelevant that Whitehurst did not clarify his charge after the OEEODM accepted the claim for processing.

764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires the plaintiff to do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 557).  The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679.  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). The Court construes *pro se* complaints liberally. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

2.    The Secretary's Motion

The Secretary contends that to the extent Whitehurst raises a discriminatory pattern or practice claim, it must be dismissed because a non-class plaintiff may not pursue a pattern or practice claim--which asserts the rights of all employees who are members of the discriminated-against group.  ECF No. 9-1 at 12 (*citing Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998) *vacated on other grounds*, 527 U.S. 1031

(1999)). Whitehurst has not responded to this argument. *See* ECF No. 13 at 12-13.[12]

"[A]lthough [private, non-class plaintiffs] may use evidence of a pattern or practice of discrimination to help prove claims of individual discrimination," they may not succeed on their claims simply by proving that the employer has engaged in a pattern or practice of discrimination against a group. *Lowery*, 158 F.3d at 760-61. Therefore, Whitehurst may not bring an independent "pattern or practice" claim, though he may rely on evidence of such a practice to establish his other claims. *See id.*[13]

---

[12] For this reason alone, the Court could deem the argument abandoned. *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (a party abandons her claim by failing to respond to an argument).

[13] The Secretary moved to dismiss the retaliation claims based on the training course for failure to state a claim, or for summary judgment, if her motion to dismiss them for failure to exhaust administrative remedies failed. ECF No. 9 at 13. Count 2 alleges that, after engaging in protected acts, the BDO retaliated by (1) not selecting him for the CO vacancy in retaliation for his work with the co-worker, and (2) excluding him from two training classes. ECF No. 1 ¶¶83, 91. Count 4 alleges that the BDO retaliated against Whitehurst for filing an ADEA discrimination charge by excluding him from the two training classes. *Id.*

The Secretary contends that Whitehurst attended one of the classes and was ineligible for the other. ECF No. 9-1 at 12-13; ECF 17 at 4. Whitehurst contends that the fact that young, Caucasian women with less experience than him were admitted to the courses before he was demonstrates retaliatory intent, and that he attended one of the courses is irrelevant. ECF No. 13 at 12.                                                      (continues)

C.    Summary Judgment

1.    Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] .
. . if the movant shows that there is no genuine dispute as to

---

The ADEA and Title VII prohibit employers from discrimin-
ating against an employee because the individual has opposed a
practice made unlawful by the ADEA or Title VII, or filed a
charge, testified, assisted, or participated in a proceeding or
litigation under the ADEA or Title VII.  29 U.S.C. § 623(d); 42
U.S.C. § 2000e-3(a).  To state a claim for retaliation under
Title VII and the ADEA, the plaintiff must show that (1) he
engaged in a protected activity, (2) his employer took a
material adverse action against him, and (3) there was a causal
connection between the protected activity and the adverse
action—that is, the employer took the adverse action because the
plaintiff engaged in protected activity.  *Holland v. Wash.
Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (Title VII);
*Benjamin v. Vilsack*, 337 F. App'x 356, 357 (4th Cir. 2009)
(ADEA).

An adverse action is material if it "might well have dis-
suaded a reasonable worker from making or supporting a charge of
discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548
U.S. 53, 67-68 (2006) (internal quotation marks and citations
omitted).  For example, excluding an employee from an important
training course "that contributes significantly to the employ-
ee's professional advancement might well deter a reasonable
employee from complaining about discrimination.  *Id.* at 69.

The complaint alleges that Whitehurst was admitted to the
Active Pharmaceutical Ingredient Manufacturing Course.  ECF No.
1 ¶83(c).  A delay in notification of admission to a training is
not a materially adverse action.  *Burlington N. & Santa Fe Ry.
Co.*, 548 U.S. at 67-68.  That is not a basis for the retaliation
claims.  Summary judgment is appropriate on Whitehurst's claims
based on exclusion from the other course because there is no
genuine dispute that the course was only open to COs and
Whitehurst, a CSO, was ineligible.  ECF No. 18 at 1.  Because
Whitehurst was excluded for a legitimate, nondiscriminatory
reason--his status as a CSO--not in retaliation for filing ADEA
and Title VII complaints, the Secretary is entitled to summary
judgment on count 4.

any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).[14]  In considering the
motion, "the judge's function is not . . . to weigh the evidence
and determine the truth of the matter but to determine whether
there is a genuine issue for trial." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact
is genuine "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable
to . . . the nonmovant, and draw all reasonable inferences in
[its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290
F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the
"affirmative obligation of the trial judge to prevent factually
unsupported claims and defenses from proceeding to trial,"
*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526
(4th Cir. 2003) (citation and internal quotation marks omitted).
A party opposing summary judgment "may not rest upon the mere
allegations or denials of [her] pleadings, but rather must set
forth specific facts showing that there is a genuine issue for
trial." *Id.* at 525.

---

[14] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment." Fed.
R. Civ. P. 56 advisory committee's note.

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [his] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks and citation omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit." *Id.* "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). "[S]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 246-47 (quotation marks omitted).

    2.   McDonnell Douglas Framework

Unless a plaintiff has direct evidence of impermissible discrimination, he must establish a Title VII or ADEA claim under the three-pronged burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[15]  *Worden v.*

---

[15] In different circumstances, the plaintiff may use the "mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)," under which the plaintiff must offer direct or circumstantial evidence of discrimination, and "the employer can avoid liability by proving that it would have made the same decision in the absence of the discriminatory motivation."

*SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008).  Under that framework, first, the plaintiff must establish a prima facie case of discrimination.  If he makes that showing, the burden shifts to the defendant to identify "evidence that it acted on a legitimate, non-discriminatory basis."  The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for unlawful discrimination. *Id.*

To establish a prima facie case of discrimination, the plaintiff must show: (1) he is a member of a protected class; (2) he suffered from an adverse employment action; (3) he was meeting his employer's "legitimate expectations" at the time of the adverse employment action; and (4) the position for which he was rejected remained open or was filled by a similarly- or less-qualified applicant outside the protected class. *McDonnell Douglas*, 411 U.S. at 802; *Murray v. U. Food & Commc'l Workers Union*, 100 F. App'x 165, 171-72 (4th Cir. 2004).  For the ADEA claim, Whitehurst must show that the position was filled by someone "substantially younger" than him. *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 325 (D. Md. 2003).

A plaintiff can prove pretext by showing that he "was better qualified [than the candidate selected], or by amassing

---

*Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341-42 (4th Cir. 2008).

19

circumstantial evidence that otherwise undermines the
credibility of the employer's stated reasons" for not selecting
the plaintiff. *Hux v. City of Newport News, Va.*, 451 F.3d 311,
315 (4th Cir. 2006) (internal quotation marks omitted).[16]

### 3.   The Secretary's Motion

The Secretary contends that even if Whitehurst has
established prima facie cases of discrimination and retaliation,
the BDO had legitimate, nondiscriminatory reasons for not
selecting him to fill the vacancy and, therefore, is entitled to
summary judgment. ECF No. 9-1 at 17.   Whitehurst argues that
summary judgment is premature, and requests discovery.   ECF No.
13 at 18.

The Secretary has rebutted any prima facie case of discrim-
ination with evidence that it selected Aberdeen over Whitehurst
based on her better qualifications for the position.   ECF Nos.
9-14, 9-16, 9-17; *Evans v. Techs. Applications & Serv. Co.*, 80
F.3d 954, 960 (4th Cir. 1996) ("[R]elative employee qualifica-

---

[16] However, "the plaintiff cannot seek to expose that rationale
as pretextual by focusing on minor discrepancies that do not
cast doubt on the explanation's validity, or by raising points
that are wholly irrelevant to it." *Hux*, 451 F.3d at 315.   Dis-
agreements over such minor details do not raise a "genuine" dis-
pute. *Id.*   Therefore, if the employer looked at applicants'
evaluative factors as a whole, the plaintiff cannot compare
himself to the successful applicant based on one factor "art-
ificially severed" from the others, to defeat summary judgment.
*Id.*

tions are widely recognized as valid, non-discriminatory bases for any adverse employment decision.").

Whitehurst contends that he was better qualified than Aberdeen because he had more field experience, regardless of Aberdeen's or his other strengths and weaknesses. ECF No. 1 ¶2; *Hux*, 451 F.3d at 315 (a plaintiff can prove pretext by establishing that he was better qualified than the selected employee). He also questions the veracity of Sooter's statements that Aberdeen had better supervisor recommendations and did better in the interview than Whitehurst, and contends that the BDO should not have been allowed to rely on litigation experience as selection criteria. ECF No. 13-4 at 7-8; ECF No. 13-3 at 12-15.

The Court assesses job qualifications "based on the criteria that the employer has established as relevant to the position in question." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). If, considering that job criteria, "a reasonable jury could conclude . . . that [the employer's] contention that [the plaintiff] was less qualified [than the chosen employee] is not to be believed," the plaintiff has identified evidence of pretext and will survive the motion for summary judgment. *Id.* Importantly, when the employer does not prioritize tenure with the employer over other qualifica-tions, such as "a candidate's unique experience with the func-

21

tions of a particular position," the plaintiff may not rely on
that quality in isolation to show that he was more qualified
than the selectee.[17]   A plaintiff's "own opinions about [his]
qualifications and [his] employer's subjective motivations are
not sufficient to establish pretext." *Kess v. Mun. Emps. Credit
U. of Balt., Inc.*, 319 F. Supp. 2d 637, 646 (D. Md. 2004).

In assessing the candidates, the BDO considered several
factors, including, but not limited to, experience. *See* ECF No.
9-14 ¶¶17-24.  That Whitehurst had more experience with the FDA
or in the field was only one consideration. *See id.* ¶24.
Therefore, that comparison of qualifications does not show
pretext. *Hux*, 451 F.3d at 317.

Whitehurst challenges the veracity of Sooter's assessment
of his weaknesses.  ECF No. 13-3.  Without offering evidence,[18]
Whitehurst contends that because one of the Supervisory CSOs,
Paige Wilson, did not remember speaking with Sooter about
Whitehurst's performance, Sooter must have fabricated the

---

[17] *Locklear v. Sealey*, No. 10-0121, 2012 WL 1858931, *6 (E.D.N.C.
May 22, 2012) (*citing Hall v. Forest River, Inc.*, 536 F.3d 615,
620 (7th Cir. 2008)); *Hux*, 451 F.3d at 315 (plaintiff may not
artificially sever one criterion from the rest).

[18] Whitehurst submitted arguments he made to the OEEODM and EEOC.
ECF Nos. 13-3, 13-4.  His own unsworn statements are not
"evidence," for summary judgment purposes. *Orsi v. Kirkwood*,
999 F.2d 86, 92 (4th Cir. 1993); *see also Rohrbough v. Wyeth
Labs., Inc.*, 916 F.2d 970, 973 (4th Cir. 1990) (district court
may only consider evidence that would be admissible at trial on
a motion for summary judgment).

mediocre supervisor appraisal, one of Whitehurst's weaknesses.
ECF No. 13-3 at 12.  Even if Whitehurst had submitted evidence
that Wilson did not remember speaking with Sooter, Whitehurst
notes that Wilson had supervised him for only two months when he
was being considered for the BDO CO vacancy, id.[19]  Whitehurst's
challenge also does not revive an inference that the BDO made
the selection on an impermissible basis.  *See Reeves v.
Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)
("[P]roof that the employer's proffered reason is unpersuasive,
or even obviously contrived, does not necessarily establish that
the plaintiff's proffered reason is correct.").

Whitehurst believes that his productivity as an acting CO
was not poor, and successor employees must not have complained
about his performance, because he was repeatedly chosen for the
details, and a reasonable supervisor would not have selected him
again, if he had problems in his first details.  ECF No. 13-3.
Whitehurst also questions Sooter's claim that Whitehurst had
suggested at the interview that he had an "underdog" mentality,
because Sooter did not include this in his interview notes.
These inconsistencies would slightly undermine Sooter's

---

[19] Whitehurst's February 2008 performance review, from his
secondary supervisor Christine Smith, notes that the Supervisory
CSO position at Whitehurst's office was vacant during 2007--the
year before Whitehurst applied for the vacancy.  ECF No. 9-16.

credibility.[20]   Despite those minor inconsistencies, Whitehurst

has not offered evidence suggesting that the BDO intentionally

discriminated on the basis of Whitehurst's age, race, or sex, or

in retaliation.  *Reeves*, 530 U.S. at 133.

Whitehurst also challenges Aberdeen's qualifications.  He

initially contends that the asserted strengths were too vague to

be genuine because Sooter provided no examples of Aberdeen's

litigation strengths or situations she analyzed, or of her

ability to quickly adapt to new situations.  ECF No. 13-4 at 8.

He also contends that, because the vacancy announcement did not

list litigation experience as a requirement for selection, the

BDO should not have been allowed to rely on it in selecting a

CO.  *Id.*  Finally, Whitehurst accuses the Secretary of

---

[20] Whitehurst also contends that he has "never stated or thought
that [the answers to] compliance questions rest in case law,"
despite Sooter's identification of such reasoning as a weakness.
ECF No. 13-3 at 13.  As an unsworn statement, the Court cannot
weigh this contention against Sooter's sworn statement that he
believed that Whitehurst overused case law.  *See Orsi*, 999 F.2d
at 92 (Court cannot consider unsworn statements as evidence at
summary judgment).  Whitehurst next discounts what Sooter
considered a "faulty conclusion," calling it instead a
"difference[] of opinion."  ECF No. 13-3 at 13.  Whitehurst
contends that Sooter "penalized [him] for [his] opinion on the
[compliance] matter by promoting" Aberdeen.  *Id.*  If anything,
Whitehurst's argument suggests that Sooter made the selection
based on a factor *other than* Whitehurst's age, race, or gender,
and not in retaliation for Whitehurst's protected activity.
Instead, Whitehurst apparently believes that the choice was
based on his prior job performance.  This would not violate
Title VII or the ADEA.  It does not help Whitehurst avoid
summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, 148 (2000).

submitting a fake 2007 performance appraisal of Aberdeen.   ECF
No. 13 at 8 n.2.

The portions of Aberdeen's appraisal which refer to the
correct employee and date note that Aberdeen's supervisor
believed she was "perform[ing] in an outstanding manner, serving
with distinction," working on litigation and assisting
preparation for Congressional hearings.   ECF No. 9-17 at 9.
This corroborates Sooter's list of Aberdeen's strengths,
including her litigation experience and positive reviews,
without considering the evidence that Whitehurst believes
unreliable.   ECF No. 9-14 ¶23.[21]

The vacancy announcement listed very broad requirements
(U.S. citizenship and minimal education), and suggested that
other selection criteria would be used.   *See* ECF No. 9-11 at 5.
Aberdeen, Whitehurst, and the other candidates selected to
interview had satisfied the requirements on the vacancy; without
other criteria such as the answers to the interview questions,
Sooter would have had no way of distinguishing the candidates,
and the interview would have been useless.   That the announce-
ment did not list litigation experience as a pre-requisite did

---

[21] At summary judgment, the defendant's burden "is one of
production, not persuasion; it can involve no credibility
assessment."  *Reeves*, 530 U.S. at 142 (internal quotation marks
and citation omitted).

not render it an impermissible factor to consider.[22]  Whitehurst has not carried his burden of production to show pretext or avoid summary judgment.

4.   Whitehurst's Request for Discovery

The Court "must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [his] opposition." *Nader*, 549 F.3d at 961.  A party may not "withstand a motion for summary judgment by merely asserting in [his] brief that discovery was necessary," unless "fact-intensive issues, such as intent, are involved." *Id.*

In his complaint, Whitehurst noted that he had conducted a study that revealed that very few African American men have been promoted in the BDO, and Caucasians are overrepresented on the BDO staff.  ECF No. 1 ¶¶48-49.  Although he apparently conducted the study himself, he has not offered evidence supporting the results, and does not argue that discovery will enable him to obtain evidence proving that or his other discrimination allegations.  *See* ECF No. 13 at 16-18; *Harrods*, 302 F.3d at 244 (summary judgment must be denied to give non-movant opportunity for discovery when the movant exclusively possesses all relevant

---

[22] *Cf. Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 320 (4th Cir. 2005) (considering nine factors that interviewers used after interview in addition to posted criteria, in *McDonnell Douglas* framework).

information).  He has not demonstrated that discovery is
necessary.  *See Khoury*, 268 F. Supp. 2d at 612 (vague request
for discovery of information probably available in the admin-
istrative record does not justify denial of summary judgment).

The Secretary is entitled to summary judgment on counts 1,
2, and 3.

III. Conclusion

For the reasons stated above, the Secretary's motion for
summary judgment will be granted on counts 1, 2, and 3; her
motion to dismiss for lack of subject matter jurisdiction will
be granted on count 4.

_____7/26/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

27